**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

DAVID WAYNE LUMMUS                                                                                  PLAINTIFF

v.                                                    2:12CV00029-SWW-JTK

JOHN DOE, et al.                                                                                  DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan

Webber Wright.   Any party may serve and file written objections to this recommendation.

Objections should be specific and should include the factual or legal basis for the objection.   If the

objection is to a factual finding, specifically identify that finding and the evidence that supports your

objection.   An original and one copy of your objections must be received in the office of the United

States District Court Clerk no later than fourteen (14) days from the date of the findings and

recommendations.   The copy will be furnished to the opposing party.   Failure to file timely

objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

the same time that you file your written objections, include the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.        Why the evidence proffered at the hearing before the District Judge (if such a hearing

is granted) was not offered at the hearing before the Magistrate Judge.

1

3.      The detail of any testimony desired to be introduced at the hearing before the District

Judge in the form of an offer of proof, and a copy, or the original, of any documentary or

other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional

evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

**I.      Introduction**

This matter is before the Court on Defendant Peikar's Motion for Summary Judgment (Doc.

No. 33).   By Order dated January 29, 2013, this Court directed Plaintiff to file a Response to the

Motion within fifteen days of the date of the Order (Doc. No. 37).   The Court further advised the

Plaintiff that failure to respond to the Court's Order could result in the dismissal without prejudice

of his Complaint, pursuant to Local Rule 5.5(c)(2).[1]   As of this date, Plaintiff has not filed a

---

[1]Rule LR5.5(c)(2) of the Rules of the United States District Courts for the Eastern and
Western Districts of Arkansas provides as follows:

It is the duty of any party not represented by counsel
to promptly notify the Clerk and the other parties to
the proceedings of any change in his or her address,
to monitor the progress of the case and to prosecute
or defend the action diligently . . . . If any communi-
cation from the Court to a pro se plaintiff is not
responded to within thirty (30) days, the case may be
dismissed without prejudice. . . .

Response to the Motion, and has not otherwise corresponded with the Court.

Plaintiff Lummus filed this federal civil rights action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), while incarcerated at the Federal Correctional Institution (FCI), Forrest City, Arkansas.[2]   In his Amended Complaint, Plaintiff alleged deliberate indifference to his serious medical needs by Defendant, and asked for monetary relief (Doc. No. 6).[3]

According to his Amended Complaint, Plaintiff visited the FCI health center on May 17, 2010, with a complaint about pain and swelling in his left testicle. (Doc. No. 3, p. 3.) Defendant Peikar transferred him to the local hospital for an ultrasound of his testicular area, at which time he was diagnosed with an enlarged epididymis and small cysts. (<u>Id</u>.) The next day he was placed on antibiotics, but after the pain and swelling increased over the next few days, he returned to the health center on May 20, 2010. (<u>Id</u>. at pp. 3-4.) A physician's assistant (PA) Maples, examined him and injected him with an antibiotic and a pain medication. (<u>Id</u>.) When the pain continued into the next evening (Friday), Plaintiff asked an officer to call the health center and explain his situation. (<u>Id</u>. at p. 4.) The technician on duty instructed Plaintiff to keep ice on the area and appear at sick call on Monday to see a medical staff member. (<u>Id</u>.)  On Monday, Plaintiff again visited the health center and was examined by both Maples and Defendant Peikar. (<u>Id</u>. at p. 5.) Peikar's initial reaction was for Plaintiff to continue his medication as prescribed, despite the fact that Plaintiff's testicle was the

---

[2]Plaintiff notified the Court of a change in his address on August 27, 2012, indicating his release from incarceration (Doc. No. 28).

[3]Although Plaintiff originally named three other individuals as Defendants, they were dismissed after he failed to include allegations against them in his Amended Complaint. See March 30, 2012 Order (Doc. No. 16).

size of a grapefruit.  (Id.)  However, following a conversation with Maples and Plaintiff's complaint of increased pain, Peikar directed that Plaintiff be transported back to the hospital (Id. at p. 6.) Plaintiff underwent surgery to have his testicle removed and returned to FCI on June 2, 2010, with prescriptions for antibiotic and pain medications and recommended instructions that he be "inspected" daily.   (Id. at p. 7.)   Plaintiff saw Defendant on June 3, 2011, for a follow-up appointment, at which time Defendant did not examine him but wrote Plaintiff prescriptions and discussed diet and weight loss.  (Id. at p. 8.)  After Plaintiff failed to receive his medications the next few days, he returned to the infirmary on Monday, June 7, 2010.  (Id.)  He spoke with PA Maples, who checked into the matter and stated that the computer showed that Defendant had cancelled Plaintiff's medications.  (Id.)   She then re-ordered his medications.  (Id. at p. 9.)

## II.   Summary Judgment Motion

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary

4

judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." <u>Id</u>.

### A.    Defendant's Motion

In support of his Motion, Defendant Peikar states Plaintiff's claim against him should be dismissed because he provides no evidence that he acted with deliberate indifference to his medical care in treatment.  In support of his Motion, Defendant provides a Declaration (Doc. No. 33-1) and Plaintiff's medical records (Doc. No. 36) to show the following: Plaintiff arrived at FCI, Forrest City, in April, 2010, with a medical history of bowel and bladder incontinence due to a trauma he sustained when he was twelve years old.  (Doc. No. 33-1, p. 1.)  Plaintiff also uses a genitourinary device for urinary incontinence, and prior to his arrival at Forrest City, had been diagnosed with an infection due to the use of that device.  (<u>Id</u>. at pp. 1-2. )  Defendant examined him on May 3, 2010, requested a podiatry consult for an ingrown toenail, and ordered medications for urinary incontinence and bipolar disorder.  (<u>Id</u>. at p. 2.)  At the time, Plaintiff had no other complaints.  (<u>Id</u>.)

Defendant next saw Plaintiff on May 17, 2010, when he appeared at the health center with complaints about pain and swelling in his left testicle.  (<u>Id</u>.)  Defendant provided him with an injection of pain medication and ordered that he be transferred to the local hospital.  (<u>Id</u>.)  At the hospital, Plaintiff underwent a scrotal ultrasound which revealed an enlarged left epididymis, together with epididymal cysts and hydroceles.  (<u>Id</u>. at pp. 2-3.)  Upon his return to FCI, Defendant ordered an antibiotic oral tablet to be administered for seven days, together with Tylenol/Codeine for pain. (<u>Id</u>. at p. 3.)  Plaintiff returned to the health center on May 20, 2010, with continued complaints about testicular pain, and was given injections of antibiotic and pain medications. (<u>Id</u>.) He received more injections on May 21 -23, 2010, and returned to the infirmary on May 24, 2010,

with complaints of increased pain and swelling.  (<u>Id.</u> at pp. 3-4.)  After noting tenderness, swelling, erythema, and inflammation to his scrotum, he was transferred to the local hospital where he was diagnosed with a scrotal abscess and cellulitis.  (<u>Id.</u> at p. 4.)  Plaintiff underwent a left orchiectomy[4] and was discharged with oral antibiotics and pain medications on June 2, 2010.  (<u>Id.</u>)  Defendant next saw Plaintiff on June 3, 2010, and placed a written order for the antibiotic Cephalexin to prevent infection. (He had placed an oral order for this medication the prior evening, upon Plaintiff's return from the hospital.) (<u>Id.</u>)  However, for a reason unknown to Defendant, the prescription was cancelled. (<u>Id.</u>) When Plaintiff saw other medical care providers on June 10, 2010, he complained about not receiving his antibiotic, but did not show any signs of infection.  (<u>Id.</u> at pp. 4-5.)  At that time he had no signs of inflammation, drainage, swelling, or fever.  (<u>Id.</u> at p. 5.)  Defendant was not aware of any subsequent complaints by Plaintiff with respect to post-surgical complications. (<u>Id.</u>)

Based on this Declaration and the medical records in support, Defendant states Plaintiff cannot support a finding that he acted with deliberate indifference.  First, Defendant states he timely referred Plaintiff to the hospital on two different occasions for treatment of his complaints.  Second, although Plaintiff complained of increased pain from Friday, May 21, 2010, to Monday, May 24, 2010, Plaintiff admits he received antibiotics and pain medications during that time, and provides no evidence that Defendant saw Plaintiff during that time period or acted to prevent him with medication and treatment.  Third, medical records show that Defendant verbally ordered the Cephalexin antibiotic on June 2, 2010, and again ordered it in writing the next day when he saw Plaintiff; yet, for reasons unknown to Defendant, the prescription was cancelled.  Defendant states in his Declaration that he did not intend to cancel that order and is not aware of how or why such

---

[4]Removal of the testicle. www.webmd.com/prostate-cancer/orchiectomy-surgery.

occurred.  Finally, Defendant states that Plaintiff cannot show that his failure to receive that medication resulted in harm, since when Plaintiff appeared at the health center to complain about not receiving the medication, he showed no signs of infection.

Defendant also states he is entitled to qualified immunity, since Plaintiff provides no facts to support a finding of deliberate indifference.

### B.    Analysis

In order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendant was deliberately indifferent to a serious medical need.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).   However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference.  Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).  See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment).  Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment."  Long v. Nix, 86 F.3d  761, 765 (8th Cir. 1996).  In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim.  Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds), quoting Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th

Cir. 1994).  Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment."  Dulany, supra, 132 F.3d at 1240.

Having reviewed Plaintiff's Amended Complaint, Defendant's Motion, and the medical records provided in support, the Court finds no dispute of fact concerning the medical care and treatment provided to the Plaintiff by Defendant, and that Defendant is entitled to judgment as a matter of law on Plaintiff's claims against him.  The medical records show that Defendant Peikar treated Plaintiff on several occasions and immediately referred him to the local hospital for treatment on two occasions.  In addition, although Plaintiff complains about a denial of medication following his return to FCI after surgery, he provides no evidence that Defendant was responsible for the cancellation of his medication, that it was an intentional act by Defendant, or that Plaintiff suffered harm.  Defendant states in his Declaration that he ordered the medication orally and in writing, and has no idea how or why it was cancelled, and Plaintiff has not responded to Defendant's Motion to offer a dispute of that fact.  Therefore, absent evidence to show that Defendant's actions resulted in a detriment to Plaintiff's health, and absent any response from Plaintiff to create a dispute of material fact, the Court finds as a matter of law that he presents no evidence of deliberate indifference by Defendant.

Defendant also moves for summary judgment based on the doctrine of qualified immunity, which protects officials who acted in an objectively reasonable manner.  It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982).  Qualified immunity is a question of law, not a question of fact.  McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005).  Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether a defendant is entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful.  Pearson v. Callahan, 555 U.S. 223, 232 (2009); see also Saucier v. Katz, 533 U.S. 194, 201 (2001).[5]  Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative.  Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

Upon close review of the medical records and the evidence in support of the Motion for Summary Judgment, the Court finds that Defendant acted reasonably under the circumstances.  No reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right.

---

[5]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Nelson v. Correctional Medical Services, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

**III.    Conclusion**

IT IS, THEREFORE, RECOMMENDED that Defendant's Motion for Summary Judgment

(Doc. No.  33) be GRANTED and Plaintiff's Complaint against Defendant be DISMISSED with

prejudice.

IT IS SO RECOMMENDED this 4th day of March, 2013.


_____
    JEROME T. KEARNEY
    UNITED STATES MAGISTRATE JUDGE